SELDEN–BRECK CONST. CO. v. KELLEY et al. (No. 7159.)

(Court of Civil Appeals of Texas. Dallas. June 13, 1914. Rehearing Denied July 3, 1914.)

1. TRIAL (§ 119*)—ARGUMENT—ISSUES.
    In an action for the death of a servant, where it was alleged that an open shaft in a building under construction and ladders placed therein by defendant made the shaft, the only place furnished, an unsafe place for work, and in which defendant claimed to have used all ordinary means to prevent the injury, and where there was evidence that after his death the ladders were removed from the shaft and another place provided for the same work, argument for plaintiff that if defendant had removed the ladders from the shaft before the accident as promptly as it did after, and thereby afforded a safe place to work, deceased would have been alive and there would have been no suit, was not improper as urging a ground of negligence not alleged.
    [Ed. Note.—For other cases, see Trial, Cent. Dig. § 284; Dec. Dig. § 119.*]

2. TRIAL (§ 252*) — INSTRUCTIONS — APPLICATION TO ISSUES.
    In an action for a servant's death by being struck by a falling piece of iron while at work in the bottom of an elevator shaft of a building under construction, where there was no evidence as to who or what caused it to fall, instructions as to whether defendant failed to exercise ordinary care to avoid injuring deceased, and, if so, whether such failure was the proximate cause of his injury, correctly covered the evidence; and hence the refusal to submit special issues as to how the piece of iron got to the elevator shaft and fell, and as to whether it was brought there and negligently or unintentionally allowed to fall, was not error.
    [Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 505, 596–612; Dec. Dig. § 252.*]

3. TRIAL (§ 350*)—INSTRUCTIONS—APPLICATION TO EVIDENCE.
    In an action for the death of a servant killed by a piece of iron falling in an elevator shaft at the bottom of which he was working, where there was no evidence as to how or why it fell, defendant's request to submit questions as to how the iron got to the edge of the elevator shaft, whether it was moved and whether it was caused or permitted to fall negligently or unintentionally, was properly refused as seeking to elicit the evidence by which the facts were established, in violation of Rev. St. 1911, art. 1985.
    [Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 828–833; Dec. Dig. § 350.*]

4. TRIAL (§ 252*) — INSTRUCTIONS — APPLICATION TO EVIDENCE.
    In such action, where the cause of the falling of the piece of iron was wholly conjectural and the jury could not have found that one not a vice principal of defendant caused it to fall, the submission of a special issue as to whether the servant's death resulted from negligence on the part of some employé of defendant not a vice principal was properly refused.
    [Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 505, 596–612; Dec. Dig. § 252.*]

5. TRIAL (§ 256*)—INSTRUCTIONS—OMISSION—REQUEST FOR EXPLANATORY INSTRUCTION.
    In an action for a servant's death, where the submission for plaintiff of the question whether defendant's failure to use ordinary care to avoid injuring deceased proximately caused his injury was correct as far as it went, defendant, if desiring a more specific question concerning the proximate cause of death, or to have the jury restricted to a consideration of whether its control and handling of the iron which fell and killed deceased was negligent, should have requested such question, since such omissions are not reversible error in the absence of requested correct charges or queries.
    [Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 628–641; Dec. Dig. § 256.*]

6. MASTER AND SERVANT (§ 278*)—ACTION FOR INJURIES—SUFFICIENCY OF EVIDENCE—RES IPSA LOQUITUR.
    Evidence in an action for the death of a servant, killed by a piece of iron falling in an elevator shaft at the bottom of which he was working, where there was no evidence as to how or why it fell, held sufficient to sustain a verdict for plaintiff, within the rule res ipsa loquitur.
    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 954, 956–958, 960–969, 971, 972, 977; Dec. Dig. § 278.*]

Appeal from District Court, Dallas County; J. C. Roberts, Judge.

Action by Elizabeth Kelley against the Selden-Breck Construction Company, and another. Judgment for plaintiff against Selden-Breck Construction Company, and it appeals. Affirmed.

Lassiter, Harrison & Rowland, of Ft. Worth, for appellant. Carden, Starling, Carden, Hemphill & Wallace, of Dallas, for appellees.

RASBURY, J. Appellee sued appellant and Butler Bros. for damages for pecuniary loss resulting from the death of her son, Angus Kelley, due to injuries received by him while engaged in the performance of his duties as a plumber in the employ of William Burke, a subcontractor of appellant while the latter

was engaged in the erection of a building in the city of Dallas for Butler Bros. Appellee alleged, omitting formalities, in effect, that her son's duties at the time he was injured were being performed in the basement of the building, the entry and exit to and from which was by ladder placed in the opening or shaft intended for the elevators extending from the first or ground floor of the building to the basement floor, and that while her son was descending the ladder a heavy piece of metal, the property of appellant and under its control, fell down the elevator shaft from some point above, striking her son and inflicting upon him serious injuries, from which he died the same day. Appellee further alleged that she was unable to account for the fall of the piece of metal, but that it would not have fallen but for the negligence of appellant in allowing same to be handled, brought, or left in such proximity to the open elevator shaft as to permit same to fall, drop, or be pushed into said shaft, since appellant knew, or by the exercise of ordinary care could have known, that the shaft was used by employés of the subcontractor, and that appellee's son was at work in the shaft, and that there were no platforms or other obstructions in the shaft to break the fall of any substance falling down same, nor any barriers or inclosures around the openings of the shaft to prevent such objects being pushed or dropped therein. Appellant tendered the general issue, and specially denied that the metal which fell upon appellee's son was caused or permitted to fall by its negligence. Further, that appellee's son was accustomed to laboring in unfinished buildings, and knew or in the exercise of ordinary care could have known that there was in and about the building upon which he was working various and sundry pieces of material and other things destined for use in the building, any of which would injure him if carelessly or unexpectedly precipitated by some one down the elevator shaft, and that appellee's son, being familiar with such conditions, assumed the risk of that which injured him, and was not therefore entitled to recover. We deduce, in support of the verdict of the jury, from the evidence in substance the following essential facts: Appellant was, at the time Angus Kelley was killed, a private corporation engaged in erecting for Butler Bros. an eight-story commercial building in the city of Dallas. Appellant had sublet the plumbing work for the building to William Burke, and Angus Kelley was employed by Burke as a journeyman plumber on that part of the work. The building was in an unfinished condition, but that fact is material only with reference to the elevator shaft and its surroundings. This shaft, one of several, extended from the basement to the top of the building and had been used by the workmen in mounting from one floor to the other, the means being a ladder placed on each floor, beginning with the base-

ment, and leading to the next floor above, and it was the custom to transport material from floor to floor through the shaft and by the ladders. Around the openings of the shaft on each floor there were no railings or barriers. One of the witnesses, the architect, testified that 2x12 planks were laid across the openings, except for a space large enough for the workmen to pass up the ladders, but that they were at times removed. There was proof tending to show that at the time of the accident the shaft had been cleared of all ladders and other obstructions by the Otis Elevator Company, preparatory to installing the elevators therein, and the workmen warned to keep out of the shaft, and there was testimony tending to show that the steps enumerated were taken after the accident. At the time Kelley was killed he was either descending the ladder which led down to the basement or standing thereon at work. He was killed by being struck by a descending angle iron or door jamb precipitated down the elevator shaft from somewhere between the third and seventh floors. Only one witness saw the descending piece of iron, and he nor any other witness was able to explain what caused same to fall. Its fall is wholly without explanation. The door jamb or angle iron is what its name indicates, and was used at each door opening in the building instead of brick at that part of the jamb next to the floor. It was 36 inches long, 24 inches wide, and weighed 107 pounds. These irons, 36 in number, had been received and distributed over the building by appellant prior to the accident, 12 of them having been placed in the door openings. Appellant had general charge and control of all the work through A. J. James, general superintendent and vice principal. There were 300 or 400 men employed on the building. We will state any other evidence that may be necessary and our conclusions therefrom in discussing the various assignments of error. There was a jury trial which resulted in verdict for appellee for $5,000, followed by similar judgment, from which this appeal is taken.

[1] The first assignment of error is based upon alleged improper argument of counsel for appellee, who, in presenting the case to the jury, argued that if appellant had removed the ladders from the shaft before the accident as promptly as it did after, and thereby afforded Kelley a safe place to work, he would have been alive and there would have been no lawsuit. The proposition is that by such argument a ground of negligence not alleged was urged as the basis of verdict for appellee. Appellee alleged, among other things in effect, that the open shaft and the ladders placed therein by appellant was not a safe place in which to work, but the only one furnished by appellant for the purpose for which it was used, and there was much testimony supporting that theory, and some tending to show that after Kelley was injured the

ladders were removed from the shaft and another place provided for the men to be used for the same purpose that the shaft had been used. The trial judge qualified the bill of exception preserving the objection to the testimony by the explanation that counsel for appellant had, in presenting the case to the jury, stated that appellant had used all the means to prevent the injury to Kelley that were ordinarily used under like conditions. Thus it appears that the argument really had reference to whether or not appellant had exercised care in furnishing Kelley a safe place to work, not that the ladder was unsafe. In fact that part of the evidence preserved in the bill of exception shows such to be the case, since counsel distinctly speaks of a "safe place to go up," meaning of course the shaft down which it was alleged the iron had been precipitated, and it occurs to us that it was not improper, in answer to appellant's claim of care in providing a safe place to work, to argue that if the ladders, upon which the workmen ascended and descended to their work had been placed at some spot other than the open shaft, the injury probably would not have occurred. Further, it is not shown or claimed that such argument in any respect caused an excessive verdict, which fact, coupled with the further fact that it is not claimed that the verdict is against the weight or the preponderance of the evidence, indicates that the argument was harmless, even though improper, as contended by appellant.

[2] The second, third, fourth, and fifth assignments of error will be considered together. The issues of fact were submitted to the jury upon special issues, and by the assignments enumerated it is urged that the court erred in refusing to submit to the jury the following questions:

"(a) How did the jamb guard in question in this case get from the place where it was laid to the edge of the elevator shaft?

"(b) Did it, or not, get to the elevator shaft by the act of some person or persons in taking hold of it and moving it?"

"(a) Did some person or persons move this jamb guard from its position on the floor and bring it to or near the elevator shaft and cause or permit it to fall down the shaft?

"(b) If so, did such person or persons drop the jamb guard down the shaft intentionally or unintentionally?

"(c) If some person or persons unintentionally caused the jamb guard to fall, was this negligence on the part of such person or persons?"

It is urged by appellant that since the evidence wholly fails to disclose how the iron fell down the shaft and since the weight of the iron precludes any theory other than that the same was precipitated down the shaft by some human agency, the questions were pertinent and bore directly upon appellant's liability, and should have been submitted to the jury. We are of opinion that the court was correct in refusing to submit the questions. There is in the record of the evidence not a single fact or circumstance that would have sustained an affirmative finding upon any of the questions. It is a curious and anomalous situation, but nevertheless true so far as the record discloses, that those in charge of the building and those interested in Kelley's misfortune were unable to secure from the several hundred employés upon the building a single fact or circumstance upon which an inference or theory could be based concerning who or what precipitated the iron down the shaft. The evidence thus failing to disclose the cause, and, the shaft being in the open and dangerous condition it was, and it being undisputed that the iron did in fact fall down the shaft from above and injure Kelley, the court correctly covered the facts in evidence when the jury was asked if appellant failed to exercise ordinary care to avoid injuring Kelley, and, if so whether such failure was the proximate cause of his injury. Of course, there were other features of the case which were covered by the charge of the court, but we are now discussing, in the light of the testimony in the record, only those questions requested by appellant to be submitted to the jury and refused by the court and those actually submitted by the court to the jury.

[3] It is also urged by counsel for appellee that the special questions were correctly refused, among other reasons, because they sought to elicit from the jury, not the facts established by the evidence, but the evidence by which the facts were established. Article 1985, R. S. 1911. An examination of the special questions will, in our opinion, support the contention, since the special questions relate categorically to circumstances theoretically possible in the case, but which, as we have said, are not supported by a fact or circumstance in the record, and a discussion of which would be purely academic.

[4] The sixth assignment complains of the refusal of the court to submit to the jury whether or not the death of Kelley resulted from an act of negligence on the part of some employé of appellant not a vice principal. As we have said at another place, the cause of the falling of the iron is a mystery, and the jury could not have correctly found that one not a vice principal of appellant caused the iron to fall. That particular fact, although undisputed, was unexplained, and must be inferred from other facts. It being so, more cannot be said than that the issue should not have been submitted.

[5] The eighth assignment of error is a criticism of question No. 2, submitted to the jury. This question is:

"Did Selden-Breck Construction Company's failure, if any, to exercise ordinary care to avoid injuring Angus Kelley, upon such occasion proximately cause him to be injured?"

The query as far as it goes is correct, and followed a question as to whether appellant failed to exercise ordinary care to avoid injuring Kelley at the time he was injured. If the appellant desired a more specific question concerning the proximate cause of Kelley's death, or desired the jury restricted to a

consideration of whether appellant's control, management, and handling of the iron was negligence, it should have requested such question, since it has long been settled that such omissions are not reversible error in the absence of requested correct charges or queries.

[6] The ninth, tenth, eleventh, and twelfth assignments are that the evidence is insufficient to support the finding of the jury upon the several issues of fact submitted by the court to the jury. These assignments we believe it is our duty to overrule. The work, in all its details, was in charge of the general superintendent of appellant, its vice principal. The only fact that can be said to be lacking of direct proof is that some one representing appellant caused the iron to fall down the shaft. All those upon the work were there under the control and direction of appellant, engaged in the construction of the building, and that the iron could have been moved or dropped down the shaft except in obedience to orders given in prosecution of the work in which all were engaged passes comprehension. No motive is shown or even hinted at by the testimony as indicating that some one with evil intent deliberately or maliciously dropped the iron down the shaft. Twenty-four like irons had not been placed, and the placing of them was in progress at the time Kelley was injured, and since one of them in fact did fall, the conclusion seems inevitable that it must have fallen while it was being moved about preliminary to placing it.

A careful consideration of all the evidence leads us to the conclusion that it presents a case well within the rule of res ipsa loquitur.

The judgment is affirmed.