TEXAS MFG. CO. v. FITZGERALD.
(No. 8152.)

(Court of Civil Appeals of Texas. Ft. Worth. April 10, 1915. Rehearing Denied May 15, 1915.)

1. PRINCIPAL AND AGENT ⬤⟲24 —EVIDENCE OF AGENCY—SUFFICIENCY.

In an action for the value of labor and materials performed and furnished in repairing a building, evidence *held* sufficient to make a question for the jury, as to the authority of the person who employed plaintiff to make the repairs to represent defendant.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 722, 723; Dec. Dig. ⬤⟲24.]

2. PRINCIPAL AND AGENT ⬤⟲22 — EVIDENCE OF AGENCY—ADMISSIBILITY.

Evidence that M. called up the defendant company on the telephone and asked for its president, and talked to some one answering the phone in response to this request, and evidence of his statements to the person answering the phone with reference to the repair work to be done on a building, and the probable charge therefor, was admissible on the question of whether M. was authorized to bind the company by a contract for repairs, as agency may be established by circumstantial evidence.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. § 40; Dec. Dig. ⬤⟲22.]

3. PRINCIPAL AND AGENT ⬤⟲190 — ACTIONS ON AGENTS' CONTRACTS—ADMISSIBILITY OF EVIDENCE.

M.'s statements to a tenant in the building after such telephone conversation that he had better do the work, and that when it was done he would O. K. the bill, was admissible on the question of whether M. in fact authorized the repairs.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 718–720; Dec. Dig. ⬤⟲190.]

4. EVIDENCE ⬤⟲121—STATEMENTS AND REPRESENTATIONS BY AGENT—ADMISSIBILITY.

Statements and representations made by an agent of a corporation acting within the scope of his authority, are admissible as res gestæ.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 303, 307–338, 1117, 1119; Dec. Dig. ⬤⟲121.]

5. PRINCIPAL AND AGENT ⬤⟲120— EVIDENCE OF AGENCY—ADMISSIBILITY.

Evidence that after the repairs to a building were completed, plaintiff took a bill made out against defendant to its president, and that the president, without denying that he had authorized the work, refused to pay the bill because he did not know whether the work was done or not, and that he sent M. to see if the work had been done, was admissible on the question of whether M. had authority to contract on behalf of defendant for the repairs.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 402–412; Dec. Dig. ⬤⟲120.]

6. CORPORATIONS ⬤⟲406—OFFICERS—AUTHORITY.

The president of a manufacturing company had authority to bind the company by a contract for repairs on a building, if entered into by him for the benefit of the company.

[Ed. Note.—For other cases, see Corporations Cent. Dig. §§ 1611–1614; Dec. Dig. ⬤⟲406.]

7. PROPERTY ⬤⟲9—EVIDENCE.

In an action for the value of repairs on a building under a contract with M., defendant, a manufacturing company, denied its ownership of the building, and M.'s authority to bind it by contract. A witness testified that M. was in charge of brass works which occupied one floor of the building. A letter head purporting to be that of the defendant, and on which there was a picture of the building and beneath it the words, "Our Brass Foundry and Machine Shops," was received in evidence. *Held*, that this letter head was admissible as tending to prove defendant's ownership or control of the building, even though not admissible on the question of M.'s agency, especially as it would seem that it bore incidentally upon the question of agency.

[Ed. Note.—For other cases, see Property, Dec. Dig. ⬤⟲9; Evidence, Cent. Dig. § 1033.]

8. APPEAL AND ERROR ⬤⟲1052 — HARMLESS ERROR—ADMISSIBILITY OF EVIDENCE.

In an action for the value of repairs to a building, there was evidence that the work was done on Sunday for the convenience of a tenant whose laundry would have been forced to shut down if the work had been done on week days, and that double pay for Sunday work was usual and customary. No contract or understanding as to the prices to be charged appeared, except that it was estimated when the contract for the repairs was made, that it would cost from $250 to $1,000, and that the verdict was for an amount less than the minimum estimate. *Held*, that there was no merit in an assignment of error complaining of the admission of plaintiff's testimony that the work was done on Sunday, and that his laborers were entitled to double pay for Sunday work.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4171–4177; Dec. Dig. ⬤⟲1052.]

Appeal from Tarrant County Court; Charles T. Pruitt, Judge.

---

Action by J. H. Fitzgerald against the Texas Manufacturing Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Ike A. Wynn, of Ft. Worth, for appellant. Lattimore, Cummings, Doyle & Bouldin, of Ft. Worth, for appellee.

BUCK, J.  J. H. Fitzgerald, appellee herein, sued the Texas Manufacturing Company, appellant, to recover for certain repairs made on a building alleged to have been owned and controlled by the defendant company, alleging that he furnished in the performance of said repairs lumber and other material of the reasonable value of $69.08, and labor in the sum of $83.70, and the service of a foreman which he alleged of the reasonable value of $50, and he sought to recover further the sum of $50 for his own work and labor and risk in doing said work, making a total of $252.78. He further alleged that the contract of employment was made on behalf of defendant company by one W. W. Mayer, whom he alleged to be the agent and representative of the defendant company and authorized to so contract and bind said company.

Defendant answered, specifically denying all the allegations of the plaintiff's petition, including the ownership of the building upon which the repairs were made and the agency of Mayer, and further denied that it had ever entered into such a contract, or that any person with authority so to do made any such contract for defendant company.

Upon a trial before the court and jury a verdict and judgment was rendered for plaintiff in the sum of $220.68, from which judgment the defendant appeals.

The building in question, and alleged to be owned and under the control of defendant company, was situated at the corner of First and Throckmorton streets in the city of Ft. Worth, and occupied upon the second floor by the Midland Brass Works and on the first floor by the Texas Laundry. The work done thereon for which plaintiff sought a recovery and for which he alleged the defendant, through said W. W. Mayer, agreed to pay plaintiff the reasonable and necessary cost thereof, was on the floor occupied by the laundry and consisted of "shoring" or propping up the ceiling over and near the engine, and it seems that, on account of the heat from the engine and on account of the interference with the operations of the laundry, most of the work was performed on two Sundays, for which labor plaintiff sought to recover double the amount of wages usually paid for like services on week days, such double charges being alleged by him to be reasonable, usual and customary for such Sunday work. Defendant specially denied the right of plaintiff to recover such double wages, and that, in any event, plaintiff was not authorized under the alleged contract to perform the work on Sunday and charge therefor such double wages.

[1] In its first assignment of error appellant complains of the refusal of the court to give its first special instruction, which was in effect a peremptory instruction for the defendant, on the ground that there was no evidence that W. W. Mayer was the agent of the Texas Manufacturing Company, defendant, or was authorized to act for it in this transaction, and therefore the court should have instructed the jury to find for the defendant. Frank B. Creighton, manager of the Texas Laundry Company, testified, in part, as follows:

"The Midland Brass Works was located over the Texas Laundry Company, and there was a man named Mayer in charge of the Midland Brass Works at that time."

He further testified that the laundry each month paid its rent to the defendant company, and identified a letter head, which he testified was used by the defendant company, and on which there was a picture of the building in question, and under the picture these words: "Our Brass Foundry and Machine Shops." He further testified that when the plaintiff came to the building for the purpose of seeing about making the repairs, that witness took the plaintiff back to show him the work to be done, and afterwards sent him to Mr. Mayer, and that he later heard a conversation between Mr. Mayer and plaintiff and heard Mayer call up the Texas Manufacturing Company and ask for Mr. Butler, the president of said company, for authority to do the work, and that Mr. Mayer told the person who answered the phone the condition of the building and told him what the repairs would cost, to wit, "not less than $250 and might run up to $1,000," and that Mayer thereupon turned around and said to witness:

"You better do it and when it is done, you O. K. it for the safety of the laundry and I will O. K. the bill."

Then the work was started. After the work was completed, the plaintiff testified that he went to see Mr. Butler about the payment of the bill, and that Mr. Mayer was present and—

"Mr. Butler said he would have Mr. Mayer go and examine the work; and he kicked at the price of the work and he said he did not propose to pay anything. He talked with me rough and he said he would not pay any bill unless he knew the work was done, and he would send Mr. Mayer up to see what had been done, and I suggested that I would meet Mr. Mayer up there, and Mr. Mayer set a time. * * * I met Mr. Mayer up there and we looked the work over. * * *"

He further testified that Mr. Mayer O. K.'d the bill after examining the work done. There is other testimony in the record tending very strongly to show that in making the contract for such repairs Mr. Mayer was acting as agent for and on behalf of the defendant company, and we feel that the court did not err in refusing to give the

peremptory instruction requested, and the assignment is overruled.

[2-4] The second, third, and fourth assignments are directed to the testimony of the witnesses Creighton, Fitzgerald, and Wayland, as to what was said by Mayer at the time of the conversation over the phone by him with Mr. Butler, or with some one supposed to be Mr. Butler, on the ground that such testimony was hearsay. We do not believe that such objection is well taken. Evidence of the fact that Mr. Mayer called up the defendant company and asked for Mr. Butler, the president thereof, and talked to some one answering the phone in response to the request for Mr. Butler, and the evidence of the statements made by Mr. Mayer to the person at the other end of the phone, with reference to the repair work to be done, and the probable charge therefor, would be proof, though circumstantial in its nature, we think admissible, probative, though not conclusive, upon the question of Mr. Mayer's authority to act on behalf of, and to bind the defendant company; and Mayer's statements to and in the presence of these witnesses, in effect, authorizing the work to be done, would be admissible upon the question of whether or not the purported agent did in fact authorize the repairs. Agency may be established by circumstantial evidence. Mechem on Agency, § 100; Railway Co. v. Jones, 82 Tex. 156, 17 S. W. 534; Jesson v. Texas Land Co., 3 Tex. Civ. App. 25, 21 S. W. 625; International Harvester Co. v. Campbell, 43 Tex. Civ. App. 421, 96 S. W. 93. And as bearing upon the issues presented in these assignments might be cited Britt v. Burghart, 16 Tex. Civ. App. 78, 41 S. W. 389; Life Ins. Co. v. Stuart, 163 S. W. 396. Statements and representations made by an agent of a corporation acting within the scope of his authority are admissible as res gestæ. Henderson v. Railroad Co., 17 Tex. 560, 67 Am. Dec. 675; Railway Co. v. Garrett, 52 Tex. 133; Railroad Co. v. Sherwood, 84 Tex. 125, 19 S. W. 455, 17 L. R. A. 643; Cooper Gro. Co. v. Britton, 74 S. W. 91. Therefore we hold that the three assignments mentioned must be overruled.

[5, 6] The fifth assignment urges error in the admission of testimony of plaintiff, over objection, that after the work was done plaintiff carried the bill made out against the Texas Manufacturing Company to A. J. Butler, and that Butler refused to pay the bill upon the ground that he did not know whether the work was done or not, and that he sent the said Mayer to see if said work had been done, because, as claimed, said evidence did not show authority in said Mayer to make the alleged contract or a ratification thereof by Butler. Appellant urges that estoppel and ratification must be specially pleaded to be available, and that there was no plea of ratification, and therefore such evidence was inadmissible. Irrespective of the question of whether or not ratification must be specially pleaded to be available, which we do not think is necessarily involved in this connection, we believe the evidence is admissible as probative of the issue as to whether or not Mr. Butler, as president of the defendant company, a corporation, did authorize the repairs to be made and the employment of plaintiff to make them. When the account made out to the defendant company was presented to Butler, he did not deny that the work had been authorized by him, and seemingly conceded that it had been so authorized, in that he delegated Mayer to go and see the work and report thereon. We further think that Mr. Butler, as president of the defendant company, would be authorized to bind said company by contract of this character if entered into by him for the benefit of the company. City of Austin v. Nuchols, 42 Tex. Civ. App. 5, 94 S. W. 336; Dallas Ice Co. v. Crawford, 18 Tex. Civ. App. 176, 44 S. W. 875. The assignment is overruled.

[7] In its sixth assignment appellant urges error in the admission by the trial court of the letter head purporting to be that of the defendant company, and on which there was a picture of the building identified as the one upon which the repairs were made and under which were the words, "Our Brass Foundry," etc. This was a circumstance tending to show the ownership or control of said building by the defendant company. Appellant urges that the letter head did not tend to prove the contract, or that Mayer was authorized to act for defendant. If it did tend to prove the ownership or control by defendant company of the building, that being one of the issues specially involved in the controversy, it was admissible, even though it did not bear upon the question of Mayer's agency, though it would seem that it did bear incidentally upon that question, inasmuch as the testimony of the witness Creighton was to the effect that Mayer was in charge of the Midland Brass Works occupying the second floor of said building. The assignment is overruled.

[8] In its seventh assignment objection is urged to the action of the court in permitting plaintiff to testify that the work was done on Sunday, and that the laborers were entitled to double pay for Sunday work, because, as claimed, there was no evidence that the contract provided for the work to be done on Sunday and paid for at double wages.

The record does not disclose that there was any contract or understanding as to price or prices to be charged for the work done, except that it would probably cost not less than $250 nor more than $1,000. The evidence tends to show that the work was done on Sunday for the convenience of the tenant, the laundry, occupying the building, and that such double pay for Sunday work

was usual and customary, and that if the work had not been performed on Sunday the laundry would have been forced to shut down during week days, and moreover, the recovery awarded was some $30 less than even the minimum estimate of the probable cost, and therefore we hold that there is no merit in this last assignment.

The judgment is affirmed.