## MERCHANTS NATIONAL BANK v. W. G. EUSTIS.

### No. 1425.

1. **Officer of Corporation—Authority.**—The president of a bank has power, virtute officii, to direct its litigation and to make contracts with attorneys for their services in conducting its suits.

2. **Attorney and Client—Cancelling Employment.**—Where a party contracts with an attorney for services, relying on his statement that he is not conducting certain other adverse litigation, he may rescind the contract on discovering the falsity of such statement.

3. **Land—Interest Not Subject to Execution.**—One who, subsequent to the purchase of land, pays part of the price to the vendee and takes possession with him under an oral agreement only, has not such an interest in the land as is subject to execution.

4. **Conveyance by Attorney—Estoppel.**—An absolute conveyance of land in full by one as attorney in fact conveys not only the title of the principal, but also that of the attorney himself, by way of estoppel, unless the grantee was advised of the real state of the title. Carothers v. Alexander, 74 Texas, 328, discussed.

5. **Attorney and Client—Contingent Fee—Compromise Without Consent.**—The rule, that where an attorney contracts for a contingent fee, and the client compromises the suit without consulting him, he will be entitled to the full amount of his fee, does not apply where it is affirmatively shown that the suit could not have been brought to a successful termination. Hill v. Cunningham, 25 Texas 32, limited.

APPEAL from Tarrant. Tried below before Hon. W. D. HARRIS.

*Bomar & Bomar,* for appellant.—1. A president of a bank has no authority, by virtue of his official position as president, to employ an attorney to prosecute a suit on behalf of the bank, as plaintiff, nor to place the bank under obligations to convey land. Mfg. Co. v. Marsh, 1 Cush., 507; Fitzhugh v. Land Co., 81 Texas, 306; Barrett v. Bank, 78 Texas, 222; Terrell v. Teal, 48 Texas, 509.

2. Where an attorney by practicing deceit procures an employment from a person to represent him as an attorney, and makes a contract for a specified sum as an attorney fee, the client, on discovering the deceit, is justified in revoking the contract and discharging the attorney, whether the deceit practiced was in reference to the matter about which he was employed or not. Arrington v. Sneed, 18 Texas, 138; Hill v. Cunningham, 25 Texas, 26.

3. A resulting trust can not be created in land by one partner buying and paying for same with his individual money and taking the deed in his individual name, and afterwards selling an interest therein to

his partner and receiving pay for same, but does not execute a deed to the partner purchasing. Carothers v. Alexander, 74 Texas, 309; Senter v. Lambeth, 59 Texas, 259; Baily & Pond v. Tindall, 59 Texas, 542; Parker v. Coop, 60 Texas, 111; McKamey v. Thorp, 61 Texas, 648; Bonner v. Stephens, 60 Texas, 617.

4. Where a client employs an attorney to prosecute a suit, and agrees to pay him 50 per cent of the proceeds of the sale of the thing recovered, and the attorney is discharged, he can not recover his attorney fee unless he can show that he would have recovered for his client in said suit. Swinnerton v. Monterey Co., 76 Cal., 114.

*Hunter, Stewart & Dunklin,* for appellee.—1. The president of a national bank has control of the litigation of his bank, and may employ attorneys in the bank's litigation and agree upon the fee, and it is binding upon the bank, and dealing with the president of a national bank binds the bank. Morse on Banks, pp. 12, 85, 86, 96, 105, 123, 144.

2. A corporation will not be heard to deny the authority of its president to execute a contract after it has been performed on the part of the other contracting party. 96 U. S., 258, 312; 2 Beach on Corp., sec. 425; Mora. on Corp., secs. 100, 252; 78 Texas, 511.

3. E. F. Ikard was in possession of the lot jointly with his brother, W. S., and had paid one-half the purchase price of their joint interest, and was entitled to the deed of conveyance from W. S. Ikard. That put equitable title to a one-half interest in E. F. Ikard, and he had a right to levy an attachment on it, and the purchaser at the foreclosure sale would take whatever interests and rights E. F. Ikard had, and he being in possession with payment of purchase money under a parol sale, the purchaser at foreclosure sale would be entitled to take possession and hold it the same as he could himself.

4. Under the authority of the case of Hill v. Cunningham, 25 Texas, 26, the rule is settled, that "where an attorney contracts with the client for a contingent fee to depend upon the result of the suit, if the client compromises the suit without consulting the attorney, and without the attorney's consent, then the attorney will be entitled to recover the whole amount of the fee in like manner as if the contingency had transpired upon which the payment of the fee was to depend."

HEAD, ASSOCIATE JUSTICE.—This suit was instituted by appellee to recover of appellant compensation for his services as an attorney rendered under the following contract:

"THE STATE OF TEXAS, }
    "County of Tarrant.     }

"Know all men by these presents, that the Merchants' National Bank of Fort Worth, Tarrant County, Texas, has employed W. G.

Eustis, of Henrietta, Clay County, to bring suit for the following described property in Clay County, Texas:

"1. One hundred and fifty-three acres out of the southeast quarter of Texas & New Orleans Railroad Company section number 2, certificate number 30/508, patented to E. F. Ikard, being all of said southeast quarter, except about seven acres deeded by E. F. Ikard to the Fort Worth & Denver City Railway Company.

"2. An undivided fourth interest, or whatever interest said bank is entitled to, in lot 5, in block 14, in the town of Henrietta, being the lot on which the Henrietta National Bank building is situated.

"The said W. G. Eustis is to bring these suits at his own expense, and hold the said bank harmless against costs of court; and in consideration of his legal services in the premises, the said W. G. Eustis is to receive a commission of 50 per cent on the sale of said lands, or a commission of 50 per cent of any compromise made of said suits, said commission of 50 per cent to be in payment of his legal services and in payment of his commission on any sales he may make, or that may be made, of said lands, and to be paid whether the sale is effected by the said W. G. Eustis or by said bank; but the said W. G. Eustis is not to make any sale or compromise unless it is first submitted to and approved by said bank.

"Witness the signatures of said parties, this the 26th day of July, A. D. 1888.                                    "E. W. TAYLOR,
                              "President Merchants National Bank.
                                              "W. G. EUSTIS."

Judgment was rendered in favor of appellee in the court below for $2900.

Appellant in several of its assignments questions the right of its president to execute the contract sued upon, in the absence of authority from the board of directors. We think he had the power, virtute officii.

In 1 Morse on Banks and Banking, third edition, section 143, among other things, it is said: "It is the duty of the president to preside at meetings of the board of directors. The amount and nature of the duties imposed upon him may vary in different associations, according to the usages or the by-laws of each, but ordinarily the position is one of dignity, and of an indefinite general responsibility rather than of any accurately known power. * * * Usage or directorial votes may confer upon him special functions, and may extend his authority to correspond with the increase of active duties, but the authority inherent in the office itself is very small; indeed, it is very difficult to say precisely how or wherein it is really much in excess of that which can be exercised by any other single director. * * * Indeed, it is a singular fact that the entire collection of judicial authorities justifies the enunciation of only one act as falling within the properly inherent power of the president. This solitary function is to take charge of

the litigation of the bank. There is no question that this matter belongs to him by virtue of his office. He may institute and carry on legal proceedings, and collect demands or claims of the bank. He may appear, answer, and defend in suits against the bank. He may retain and employ counsel on behalf of the bank." We believe this quotation from the text is well sustained by the adjudicated cases.

We do not construe the contract above copied as binding the bank to convey to appellee any part of the land referred to therein.

In his petition, appellee alleged the institution of the suits contemplated by the contract, and that he had prepared them for trial, but that appellant, without his consent, had compromised and dismissed them. He alleged, that he would have gained the suits had he been allowed to prosecute them to judgment, and that his commission upon the value of the land that would have so been recovered would have amounted to the sum for which he asked judgment.

To this petition appellant, among other things, in paragraphs number 10 and 11 of its amended answer, replied, that at the time of the execution of the written contract hereinbefore referred to, and for some time previous thereto, there was pending a suit involving its title to something near 16,000 acres of land, of great value; "that prior to the date of said contract, on July 23, 1888, the said W. G. Eustis had entered into negotiations with this defendant, by applying to it to employ him, in pursuance of which the contract sued on was made; that the said E. W. Taylor, president, inquired of the said Eustis whether or not he had anything to do with the attempted foreclosure of said deed of trust and bringing about of the litigation that was involved in the suit of the British-American Mortgage Company v. Henrietta National Bank, and whether or not he represented the defendant in said suit, and the said Eustis represented to him that he had nothing to do with the said suit; that upon the faith of said representations being true, the said E. W. Taylor executed the instrument of writing sued on by plaintiff; that he would not have executed said contract had it not been for said representations; that said representations were untrue, and made with the intent to deceive this defendant; that in truth and in fact, the said Eustis represented the Henrietta National Bank, as well as the Exchange Bank;  *  *  *  that as soon as the agents of the defendant learned that said representations were untrue, they immediately discharged the said Eustis, for the reason that they had lost confidence in him," etc.

To this part of appellant's answer appellee interposed exceptions, which were sustained by the court, and this part of its defense entirely eliminated. In this we think the court erred.

In Weeks on Attorneys at Law, second edition, section 260, it is said: "An attorney should disclose to his client every adverse retainer, and even every prior retainer, which may affect the discretion of the latter. No man can be supposed to be indifferent to the knowl-

edge of facts which work directly on his interests, or bear on the freedom of his choice of counsel."

In Arrington v. Sneed, 18 Texas, 140, the following language is used: "The retainer of employment was for the professional services of the plaintiff in a case which was not to be tried until the succeeding term of the court. This suit was brought before that period arrived. It is plain that the action could not be maintained for services thereafter to be rendered. The plaintiff, therefore, sued first for the mere retainer, and proceeded by attachment. He afterwards amended, averring that the defendant had discharged him from his employment, and claiming compensation for the services actually rendered; but the alleged discharge was after the bringing of this suit, and we are of the opinion that the bringing of the suit, under the circumstances, and in the manner in which it was brought, was sufficient, without adverting to other matter, to authorize the discharge and release of plaintiff from the obligation imposed by the retainer, and dissolved the relation of attorney and client between the parties. That is a confidential relation, and implies a mutual trust, confidence, and good will, which it is not to be supposed could subsist between these parties after the bringing of this suit, under the circumstances."

Taking the allegations contained in appellant's answer in this case to be true, it appears that, in the suit involving the 16,000 acres of land, it claimed title under the foreclosure of one mortgage, while its adversary, the Henrietta National Bank, was asserting priority over it under another mortgage, of subsequent date, and appellee was the attorney representing such adverse interest.

It may be true that, technically considered, there was nothing in this litigation to prevent appellee from fighting against appellant to the best of his ability in that case, and fighting for it with his utmost strength in the suits contemplated by the contract sued upon, all being pending at the same time and in the same court; but when practically considered, it must be conceded that the average client would not have entire confidence in his doing so.

We believe it can almost be stated to be a general rule with persons anticipating litigation, to refuse to employ attorneys opposed to them in other suits of importance, although they may have no connection with each other; and from the answer in this case, it was manifestly a feeling of this kind which prompted the president of appellant bank to make the inquiry he did of appellee; and realizing this, appellee should have given a full and truthful disclosure of his connection with the matters inquired about, leaving it to appellant to employ him or not, as it might deem proper, under the circumstances; and we think his failure to do so sufficient to authorize appellant to cancel the contract induced thereby, upon discovering the real facts.

As to whether or not appellant would be liable upon a quantum meruit for the services rendered to the time of such discharge, we need not decide, as the question is not here presented.

What we have said, of course, is based entirely upon the allegations contained in appellant's answer, and we do not for a moment intimate that any of the matters therein charged did in fact occur; but, for the purpose of this demurrer, the court was required to assume their truth.

The court below tried the case upon the idea that appellee would only be entitled to recover such an amount as the evidence shows he would have received, had the cases referred to in the written contract been prosecuted to final judgment upon the merits; and it therefore becomes important to inquire as to the real title of appellant to the land involved therein.

Appellant's only claim to this land was under a sheriff's sale thereof as the property of E. F. Ikard, while its adversary claimed under prior deeds of trust, purporting to have been made by E. F. Ikard, by his attorney, W. S. Ikard. The written power of attorney to W. S. Ikard, however, only authorized him to *sell* for his principal, and did not authorize him to make mortgages.

The title to lot 5, in block 14, was in the name of W. S. Ikard, individully, and it was sought to show that E. F. Ikard had an interest therein subject to forced sale by proving orally that he paid to W. S. Ikard one-half the amount that the latter had paid therefor, and that the two had actual possession as partners, with the understanding that they were to be mutually interested therein, although no conveyance had been made from W. S. to E. F. Ikard.

In view of another trial we only deem it necessary to say, that if the original purchase was made by W. S. Ikard in his own behalf, he paying his individual money therefor and taking the deed in his name, a subsequent parol agreement accompanied with possession and payment of the purchase money, without evidence of the making of valuable improvements, would not be sufficient to confer such title upon E. F. Ikard as would be subject to levy and sale as his property. Ann Berta Lodge v. Leverton, 42 Texas, 18.

Nor would such facts create a trust in favor of E. F. Ikard, because, as is said in Parker v. Coop, 60 Texas, 118, "the trust must result, if at all, at the instant the deed is taken and the legal title vests in the grantee. No oral agreements, and no payments before or after the title is taken, will create a resulting trust, unless the transaction is such at the moment the title passes that a trust will result from the transaction itself."

The title to the 153 acres referred to in the written contract was in the name of E. F. Ikard, but appellant seeks to prove that W. S. Ikard in fact had a half interest therein, by introducing oral evidence to the effect that this land was originally acquired for the partnership of E. F. and W. S. Ikard, by the payment of partnership funds therefor. What we have already said in reference to the title to lot 5, block 14, sufficiently indicates our views as to what would be necessary to entitle W. S. Ikard to engraft a trust upon this tract in his favor. If the transaction was such that E. F. Ikard, at the time the patent

was issued to him, took the land in trust for the partnership, W. S. Ikard could assert his interest; otherwise not.

If then it be conceded that W. S. Ikard had a one-half interest in the 153 acres patented to E. F. Ikard, the question still remains as to what effect the mortgages executed by him as attorney for E. F. Ikard would have in conveying his own title by estoppel.

The general rule unquestionably is, that a party is only estopped by a deed in the capacity in which he executes it. 2 Dev. on Deeds, sec. 1280; Bige. on Estop., 5 ed., p. 337. In Smith v. Penny, 44 California, 165, it is said: "The fact that Samuel Gilmore held the deed of Thomas Gilmore at the time when he, as the attorney in fact for Thomas Gilmore, executed to the trustees the deed, is not of itself sufficient to constitute an equitable estoppel, as against Samuel Gilmore." But in a subsequent part of the opinion, it seems that, if the grantees in the deed had been ignorant of the true state of the title, and Samuel Gilmore had known this fact, the rule would have been different.

On the other hand, in Carothers v. Alexander, 74 Texas, 328, it is said: "Notwithstanding he, as president of the corporation, signed the deed purporting to convey an interest of the corporation in the land, when he, and not the corporation, owned the land, we do not think that deed, under the circumstances of this case, carried his interest by estoppel. The form and terms of the deed influence us to this conclusion. If it had been an absolute conveyance of the entire interest in the land by the corporation, and the deed had been executed by Johns as president of the corporation, when he himself owned the property, we think the deed would have passed his title by estoppel. But in fact the deed only assumes to convey the right of the corporation to an undefined and indefinite interest, and at the same time recognizes an undefined interest in the same land in C. R. Johns that it does not convey. This, we think, must prevent the deed from operating on the interest of Johns, and from conveying anything save the interest of the corporation."

The inference from this decision clearly is, that in the opinion of our Supreme Court an absolute conveyance of the entire tract by one as attorney in fact for another conveys not only the title of the principal, but also that of the attorney himself, by way of estoppel. This clearly should be the effect of such a conveyance, should it be accompanied with the necessary elements of an estoppel in pais, such as known want of knowledge on the part of the grantee of the true state of the title; but should the evidence show that the grantee was advised as to the real state of the title, we very much doubt if the quotation above from our Supreme Court would be strictly accurate as applied to such a case.

This, of course, applies also to the mortgage upon lot 5, block 14, the title to which was in the name of W. S. Ikard.

Appellee, however, contends that inasmuch as he was employed upon a contingent fee, and the cases were compromised before their decision, without his consent, this question of the real state of the title

is immaterial. He bases this upon the ground that, in the case stated, he is entitled to recover the same compensation he would have received had the suits been prosecuted to final judgment in favor of appellant for all that was claimed by it.

It must be conceded that, in the case of Hill v. Cunningham, 25 Texas, 32, expressions are used which might be given that construction, but we do not think this could have been the meaning of the court which rendered that opinion. The language referred to is as follows: "We are also of opinion, that where the attorney contracts with the client for a contingent fee, to depend upon the result of the suit, if the client compromises the suit without consulting the attorney, and without the attorney's consent, then the attorney will be entitled to recover the whole amount of the fee, in like manner as if the contingency had transpired upon which the payment of the fee was made to depend. In such cases, it would become the duty of the client to consult the attorney, and to obtain his consent to the compromise of the suit, upon such definite agreement in relation to the attorney's fee as the parties might think proper to make. We only mean to announce this as a general rule. Cases might undoubtedly present themselves in which the attorney would not be permitted to control the suit so as to prevent a compromise, or in other words, where the attorney would not be permitted to continue the litigation to the injury of the client."

We think the rule here announced should only be given application to cases where the evidence fails to show what would have been the result of the litigation had the compromise not been made, and that it would be unreasonable to hold that an attorney should receive compensation on the basis of a successful termination of the suit, when the evidence affirmatively shows that such would not have been the result.

This was the view entertained by the Supreme Court of California in Swinnerton v. Monterey County, 76 California, 114, where the following language is used: "Passing all other questions, the plaintiff ought not to recover in this action if he could have recovered nothing for the county, in case he had prosecuted to judgment the actions against McGarvey and Hartnel. He could have recovered nothing, unless the commissions sued for were illegally retained or paid to the tax collectors named." That was a suit by an attorney to recover a contingent fee of which he claimed to have been deprived by an unauthorized compromise of the cause of action; and the court decided against him, upon the ground that he would not have been successful in the suit. This seems to us the more reasonable view.

A number of other questions are presented in the briefs which will hardly arise in the same form upon another trial, and will therefore not be considered.

The judgment of the court below will be reversed and the cause remanded.

*Reversed and remanded.*

Delivered October 31, 1894.