BANKERS' TRUST CO. OF AMARILLO v. COOPER, MERRILL & LUMPKIN. (No. 820.)

(Court of Civil Appeals of Texas. Amarillo. Oct. 16, 1915.)

1. CORPORATIONS ☞657—FOREIGN CORPORATIONS — CONTRACTS — PERMIT TO DO BUSINESS.

A foreign corporation can incur liability on a contract of employment of an attorney made in the state, before it obtains a permit to do business in the state.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2356–2541, 2550, 2552–2554; Dec. Dig. ☞657.]

2. CORPORATIONS ☞432—CONTRACT BY PRESIDENT—PRESUMPTION OF AUTHORITY.

It may be presumed that the president of a corporation, employing an attorney for it, was authorized to do so, its directors having thereafter met and conferred with the attorney in reference to legal matters, especially where the corporation, sued for the services, offers no evidence denying the president's authority.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1717, 1718, 1724, 1726–1735, 1737, 1743, 1762; Dec. Dig. ☞432.]

3. CORPORATIONS ☞425—CONTRACT BY OFFICERS—AUTHORITY—ESTOPPEL.

When officers of a corporation make a contract for it, which inures to its benefit, and the results are enjoyed by it, it is estopped to deny the officers' authority to make the contract.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1697–1701, 1705; Dec. Dig. ☞425.]

4. TRIAL ☞260—INSTRUCTIONS COVERED BY OTHERS.

Requested instructions, covered by others given, need not be given.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. ☞260.]

5. APPEAL AND ERROR ☞1068—HARMLESS ERROR—REFUSAL OF INSTRUCTION.

Refusal of an instruction that agreement was not binding was harmless; it being clear that the jury did not consider the agreement.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4225–4228, 4230; Dec. Dig. ☞1068.]

6. TRIAL ☞251—INSTRUCTIONS—CONFORMITY TO ISSUES—ESTOPPEL.

The question of estoppel not being raised by the pleadings, an instruction thereon is properly refused.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 587–595; Dec. Dig. ☞251.]

7. CORPORATIONS ☞426—EMPLOYING ATTORNEYS — LIABILITY FOR SERVICES — FINANCE COMMITTEE.

After rights of attorneys to compensation for services performed for a corporation have accrued, it cannot avoid liability by placing the matter of disbursing funds and employing attorneys in the hands of a finance committee.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1596, 1702–1704, 1707, 1708, 1710–1716; Dec. Dig. ☞426.]

8. TRIAL ☞252—INSTRUCTIONS—CONFORMITY TO EVIDENCE.

An instruction, unauthorized by any evidence in the case, is properly refused.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 505, 596–612; Dec. Dig. ☞252.]

Appeal from District Court, Potter County; J. N. Browning, Judge.

Action by Cooper, Merrill & Lumpkin against the Bankers' Trust Company of Amarillo, Texas. Judgment for plaintiffs, and defendant appeals. Affirmed.

R. E. Underwood, of Amarillo, and J. H. Synnott, of Dallas, for appellant. Jno. W. Veale, of Amarillo, and Del W. Harrington, of El Paso, for appellee.

HALL, J. Appellees, a firm of lawyers, sued appellant for $2,632.65, alleging that appellant was a private corporation, chartered under the laws of the state of Arizona, July 16, 1912; that some time in the year 1912, acting through its duly authorized officers and agents, appellant employed appellees, as its attorneys, to generally advise said corporation in all legal matters pertaining to the conduct of its business, agreeing to pay appellees a reasonable sum for their services; that said services were rendered at the request of the then president and secretary of said corporation. The appellant's answer admits that it was chartered under the laws of Arizona, obtained a permit to transact business in Texas in January, 1913. There

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

was a general verdict in favor of the appellees in the sum of $1,000.

The first two assignments of error challenge the sufficiency of the evidence to support the verdict and judgment. H. H. Cooper, a member of the firm, testified, in substance, as follows:

"Our firm was consulted in connection with our employment by the Bankers' Trust Company, by Mark Logan. We were consulted with reference to some matters of the Bankers' Trust Company, or rather I was consulted, and he sought my advice as secretary of that company, and I refused to advise him with reference to it because I understood that Mr. Penry was attorney for the company, and I told him that any advice given by me would have to come on request through their attorney, and I did not advise them because it was not asked by Mr. Penry. Later I was consulted by Mr. Le Master with reference to the same matter and made the same reply; then later Judge Penry, Le Master, and Logan all came to my office together. This was the latter part of September of the 1st of October, 1912. Le Master was president of the Bankers' Trust Company. After Judge Penry came and explained the situation to me, that he was not their attorney, except nominally, and that he was not willing to advise the people, and sought my advice in conjunction with them with reference to this matter, I agreed to consult and advise with them about the matter then under discussion. There was nothing said at that time as to the amount of the fee. When we discussed the matters I arrived at the conclusion as to how they should be handled, and reported to Mr. Penry and discussed it with him and the other gentlemen. During the discussion they proposed to have our firm represent the company generally and advise with them, and we had a general discussion of the question of the fee. I told them I could not even estimate the fee because I did not know what the work would be. It was then suggested by Mr. Le Master and Mr. Logan—and I think Judge Penry was present—that we go ahead and help the company and help them out of the difficulty and help them get the property into the possession of the company, and they would pay a reasonable fee when the work was completed."

That his firm examined abstracts of title and advised almost every day with the officers of the company, including some of the directors. That it had no permit to do business in Texas at that time, and one of the first things they discussed was the manner or method of securing the permit to do business in Texas so it could carry on its business and lend money on real estate. Upon investigation it was necessary to amend the Arizona charter, reducing the capital stock. That witness procured the amendment and assisted the officers in floating a loan of $100,000. That he made a trip to Dallas with reference to the loan, examined many abstracts, wrote many deeds and other instruments, took a large number of notes for collection, and filed suit on several. That in January, 1913, he told Logan and Le Master that their fee was $2,500 up to that time. They said the fee was entirely satisfactory and their services as counsel were continued.

[1, 2] Appellant insists under these assignments that the services rendered were at the instance of promoters and to assist promoters in perfecting the organization of the company. The record is clear, however, that the charter is dated July 16, 1912. While a permit to do business in Texas might be a condition precedent to the right of the company to file suit in Texas, it was not necessary for appellant to have a permit before it could incur liabilities, make contracts for services and be sued in the state. Home Forum B. O. v. Jones, 20 Tex. Civ. App. 68, 48 S. W. 219, writ of error denied by Supreme Court, 93 Tex. 686, 50 S. W. xvi; Southern Pacific Co. v. Allen, 48 Tex. Civ. App. 66, 106 S. W. 441; Western Union Telegraph Co. v. Clark, 14 Tex. Civ. App. 563, 38 S. W. 225, writ of error denied by Supreme Court 93 Tex. 676, 38 S. W. 225. It is insisted that neither Logan nor Le Master had the right to employ appellees. During the time in which the services were rendered it appears that Logan and Le Master alternately filled the office of president, and it appears from the statement of facts that Logan was the originator and general manager of the affairs of the company. It is said in Catlett v. Starr, 70 Tex. 485, 7 S. W. 844:

"Corporations usually act through their president, or those representing him. When an act pertaining to the business of the company is performed by him, the presumption will be indulged that the act is legally done."

2 Purdy's Beach on Private Corporations announces the rule to be:

"An officer of a corporation may, by the acts of its directors or managers, be invested with capacity to bind the company, even beyond the scope of those powers which are inherent in his office; as, where in the general course of the company's business the directors or managers have permitted an officer to assume the control and direction of its affairs and have held him out to the public as its general agent." Id. § 779. "If a person assuming to act as agent of a corporation but without legal authority or an agent in excess of his proper authority make a contract and the corporation knowingly receive and obtain the benefit of it, this will be a ratification of the contract, and render the corporation liable as a party to it. In this manner ratification may be presumed of the acts of promoters, of the president, of a director, or other officer."

Section 203, Beach on Corporations, vol. 1, states the rule in this language:

"But a contract, regular on its face, executed on behalf of a corporation, and within the scope of its business by the president and secretary, is prima facie evidence of their authority to execute it, and in an action for its breach the burden of proof is on the party denying such authority."

The record shows that the directors and the finance committee, composed of the directors, met and conferred with appellees with reference to certain legal matters, and is sufficient to warrant the jury in presuming that Logan and Le Master were authorized to employ appellees, especially since appellant did not offer any evidence denying the authority of Le Master or Logan, as president, to make the contract of employment.

It is said in 7 R. C. L. §§ 437, 631, 635:

"It seems that the president has, by virtue of his office, authority to take charge of the litigation of the corporation, and power from the president of a corporation, authorizing an at-

torney to do certain acts on its behalf, will be presumed to have been authorized. * * * It seems that the president of a corporation will be presumed, in the absence of proof to the contrary, to have authority to direct the corporate litigation, and his power to employ an attorney to conduct the corporate litigation has frequently been sustained, in view of the nature of the authority vested in him. * * * The authority of officers or agents of a corporation to enter into contracts of employment and appoint agents on behalf of the corporation may be inferred from the manner in which they have been permitted to transact the business of the corporation. It is not necessary, in order to charge a corporation for services rendered, that the directors at a formal meeting should either have formally authorized or ratified the employment. Thus, while the president has no inherent authority to enter into contracts of employment on behalf of the corporation, still this authority usually will be inferred when he is intrusted with the general management of the business of the corporation; so, if an officer employs a person to perform services for the corporation and it is performed with the knowledge of the directors, and they receive the benefit of such services without objection, the corporation is liable upon an implied assumpsit."

The power of a president of a corporation to employ attorneys is discussed at great length in 2 Thompson's Corporation (2d Ed.) § 1433, in which the author cites Dallas Ice Factory, etc., Co. v. Crawford, 18 Tex. Civ. App. 176, 44 S. W. 875, and announces the rule that it may be said generally that such an officer or manager has authority to employ counsel, and in general to do whatever is necessary in any litigation in which the corporation is directly interested, and which may be regarded as essential or necessary in advancing or protecting the corporate interests, including the power to employ attorneys to attend to the current legal business of the corporation. City of Austin v. Nuchols, 42 Tex. Civ. App. 5, 94 S. W. 336; Bank v. Eustis, 8 Tex. Civ. App. 350, 28 S. W. 227; Tex. Mfg. Co. v. Fitzgerald, 176 S. W. 891(6).

[3] Appellees invoke another rule, which we think may be applicable here, and which is that when the officers of a corporation have made a contract which inures to the benefit of the company, and the results of which are enjoyed by it, the company is estopped from denying that the officer so contracting was duly authorized. First National Bank of Greenville v. Oil Co., 24 Tex. Civ. App. 645, 60 S. W. 828; Waxahachie National Bank v. Vickery, 26 S. W. 876; Hayward Lumber Co. v. Cox, 104 S. W. 403; Canadian Long Distance Telephone Co. v. Seiber, 159 S. W. 897.

[4, 5] By its third assignment of error complaint is made of the action of the court in refusing to give special charge No. 3, to the effect that, if the jury believed from the evidence that at the time Logan, Le Master, and Penry had plaintiffs to perform services for appellant they were acting for the Amarillo Securities Investment Company or for themselves individually, and if the jury should further find that the agreement with plaintiffs that their fee should be $2,500, and

they were acting for the Amarillo Securities Company or as individuals, the verdict should be for the defendants.

The fourth paragraph of the general charge is:

"If you find and believe from the evidence that the said Mark Logan, Mike C. Le Master, and J. L. Penry were not acting for the Bankers' Trust Company, at the time they engaged the services of plaintiffs (if they did engage them as alleged by plaintiffs), but were acting for themselves or for the Amarillo Securities Company, as promoters of the defendant company, and you further believe that plaintiffs' services were performed under such contract, then this defendant would not be liable for any services rendered for such promoters, and you will find for the defendants for all such services."

This paragraph of the general charge submits the same issue which the requested instruction presents in the first part. It is true the requested instruction presents the issue of the agreement between Logan, Le Master, and Penry on the one part and plaintiffs upon the other, that the fee of $2,500 was reasonable. We do not find this issue submitted in the general charge, but since the verdict of the jury was for $1,000 only, the omission, if error, is harmless, since it is clear that the jury did not consider the agreement as to the amount of the fee.

[6] Appellant insists that the court erred in overruling its fourth objection to the general charge and in refusing special instruction No. 6, upon the question of estoppel. There is evidence in the record tending to show that just before appellees presented their account for attorney's fees, Mark Logan had represented in an open meeting, at which appellees were present, that the company was not indebted to any one in any sum for attorney's fees, or otherwise. The question of estoppel is not raised by the pleadings, and the court could not properly have submitted it. Howe v. O'Brien, 45 S. W. 813; Ford v. Warner, 176 S. W. 885.

[7] The fifth assignment is based upon the refusal of the court to charge the jury that if they found that, before plaintiffs informed Logan and Le Master of the amount of their fee, a finance committee had been organized with full power to look after such things, the verdict should be for the defendant. The services of appellees, according to the record before us, were performed, in a large measure, before the appointment of a finance committee, and the liability of appellant had already attached. Appellant could not avoid liability by placing the matter of disbursing funds and employing attorneys in the hands of a finance committee after the rights of appellees had accrued. Besides, it is not clear from the record that the matter of employing attorneys rested with the finance committee.

[8] Appellant requested the court to charge the jury that if they should find from the evidence that at the time Mark Logan, Mike C. Le Master and J. L. Penry, or any of them, employed the plaintiffs to perform the serv-

ices sued for, and at the time they agreed that the amount charged was satisfactory, they, the said Logan, Le Master, and Penry were interested adversely to appellant, or if they were seeking to profit personally at the expense of appellant, and that the plaintiffs knew of such fact, to return a verdict for the defendants. We do not think this issue is raised by the pleadings. There is no testimony showing that appellees had any knowledge of any fraudulent designs on the part of Logan, Le Master, or Penry, if any such designs existed; nor does the evidence warrant the conclusion that in the employment of appellees, Logan, Le Master, or Penry were acting in their own interest and adversely to the interest of the company.

Finding no reversible error in the record, the judgment is affirmed.