## THRIFT PACKING CO. v. FOOD MA-CHINERY & CHEMICAL CORP. et al.

### No. 13495.

United States Court of Appeals Fifth Circuit.

July 17, 1951.

Harold L. Hitchins, Jr., Dallas, Tex., for appellant.

Wm. Madden Hill, Lee T. Johnson, Jr., Dallas, Tex., for appellee.

Before HOLMES, BORAH, and RIVES, Circuit Judges.

BORAH, Circuit Judge.

Appellees are creditors who filed a petition in involuntary bankruptcy against appellant, Thrift Packing Company. This appeal is from an order of the court below whereby appellant was adjudged a bankrupt.

At the outset we are met with a motion to dismiss the appeal, which we have considered along with the merits of the case and are of opinion that the motion should be overruled because a president of a corporation has, under Texas law, the authority to employ counsel, and in general to do whatever is necessary in any litigation in which the corporation is directly interested;[1] and because the giving of a bond

1. Banker's Trust Company of Amarillo v. Cooper, Merrill & Lumpkin, Tex.Civ. App., 179 S.W. 541; Dallas Ice Factory v. Crawford, 18 Tex.Civ.App. 176,

on appeal is not a jurisdictional requisite.[2] The appeal bond signed by appellant's principal stockholder, B. H. Johnson, and the Aetna Casualty Company, as surety, binds Johnson and it binds the surety, and this, as we have held, is sufficient.[3]

Turning now to the merits, a brief summary of the facts is in order. On December 20, 1949, a meeting of appellant's creditors was held for the purpose of discussing the corporation's financial condition. As a result, the parties agreed to establish a voting trust and that the board of directors should be enlarged from three to seven members, the additional members to be chosen from creditor representatives. Accordingly, on December 20, 1949, all of appellant's stockholders conveyed and delivered their shares of stock to a voting trustee,[4] to be held in trust until all of the debts then owed by appellant had been paid or until expiration of ten calendar years. The trust agreement provided that the trustee should be entitled to vote and to receive dividends on the stock, if any; that the settlors should not have any right with respect to the stock; and that the corporation should be managed by its board of directors as provided by the laws of Texas.[5] The trustee selected a new board of directors which thereafter sold the fixed assets of the corporation and converted a substantial amount of inventories into receivables and collected cash thereon. On

44 S.W. 875, 877; Merchant's National Bank v. Eustis, 8 Tex.Civ.App. 350, 28 S.W. 227, 228.

2. 2 Collier on Bankruptcy (14 ed.) pp. 926, 931.

3. Baten v. Kirby Lumber Corporation, 5 Cir., 103 F.2d 272, 273. Title 28 U.S. C. § 869 (1940), which provided that a bond for costs on appeal must be given by an appellant, was repealed by the 1948 revision because its provisions covered a subject more appropriately regulated by rule of court. 2 Collier on Bankruptcy (14 ed.) § 25.11, p. 930. Rule 73(c) of the Federal Rules of Civil Procedure, 28 U.S.C.A., is, under General Order 36, 11 U.S.C.A. following section 53, applicable to bankruptcy appeals as a right and provides in part that "after a bond on appeal is filed an appellee may raise objections to the form of the bond or to the sufficiency of the surety for determination by the clerk."

4. The voting trustee was the secretary-manager of the Dallas Wholesale Credit Managers' Association.

5. The trust agreement reads in part as follows: "Whereas, a great portion of the value of the assets of said company consists of the going business value of said corporation and the immediate cessation of business of the corporation would result in a ruinous decrease in the value of the assets whether the corporation be continued in operation as a going concern or liquidated, and Whereas, a plan for the reorganization of said corporation is being evolved with the view toward working the company out of its financial difficulty and the creditors are entitled to the controlling voice in the management, and Whereas, it has become necessary to create a voting trust of the outstanding certificates of the capital stock of said corporation in order to reorganize the governing and operating system of said corporation and Whereas, the expected benefits to flow from this re-organization plan of which this voting trust is a portion, to said stockholders, the grantors of the trust herein created, will be the possibility of the regaining of a portion or all of the book value of said stock certificates where they now have very small book value, if any, * * * Now, Therefore, we, * * * being all of the stockholders of the outstanding capital stock of the said Thrift Packing Company, * * * do by these presents grant, sell and convey, and simultaneously herewith deliver, the certificates of the capital stock of the Thrift Packing Company, to Paul A. Kerin, Voting Trustee, in trust * * *. * * * the shares of capital stock * * * herewith deposited hereunder with said voting trustee, shall be and they are now hereby, vested in the voting trustee, * * * and shall be transferred to the name of the voting trustee upon the books of the said Thrift Packing Company * * * the voting trustee, or his successors, shall, as to all stock so held by him, possess and be entitled to exercise all stockholders rights of every kind, including the right to vote and to take part in, or consent to, any corporated or stockholders action, * * * and to receive dividends on said stock, if any. The settlers of this trust shall not have any right, with respect to any such stock held by the voting trustee, to vote, or take part in or consent to any corpo-

August 14, 1950, while the corporation was still being operated and controlled by its board of directors, B. H. Johnson, an unsecured creditor, filed an application in the 116th Judicial District Court, Dallas County, Texas, for the appointment of a receiver. The application alleged that appellant was insolvent; that its affairs were being mismanaged and its assets dissipated. On August 24, 1950, the then voting trustee filed a disclaimer in the State Court in which he denied any interest in the corporation, resigned as trustee, and tendered the stock of appellant into the registry of the court. On the day following the State court found that all parties to the action desired that a receiver should be appointed and, accordingly, it issued an order appointing a receiver with authority to take charge of all of appellant's properties, which then totalled some $40,000 or $50,000 in value.

On August 31, 1950, the appellees filed a petition in involuntary bankruptcy against appellant, alleging that the corporation was indebted to them and that within four months next preceding the filing of the petition appellant had committed an act of bankruptcy in that it did on or about August 25, 1950, while insolvent and unable to pay its debts as they matured, suffer the appointment of a receiver to take charge of its property. The case came on to be heard before the court and an order was entered, adjudging appellant a bankrupt and referring the estate to a referee in bankruptcy. This appeal followed.

The controlling question here presented is whether the voting trust agreement executed on December 20, 1949, constituted a general assignment for the benefit of creditors within the meaning of section 3, sub. a (4) of the Bankruptcy Act, 11 U.S.C. § 21, sub. a(4). It being the contention of appellant that the voting trust agreement constituted an assignment for the benefit of creditors and the appointment of a receiver by the State court on August 25, 1950, was only a continuation of such prior act of bankruptcy and hence not a new act of bankruptcy committed within four months prior to the filing of the petition.

We think it is clear that the fourth act of bankruptcy was not committed unless the debtor transferred the legal title to all or substantially all of its property to a trustee for the benefit of all of its creditors. 1 Collier on Bankruptcy (14th ed.) § 3.403, 3.404, pp. 464–466. It here affirmatively appears that at no time was the legal title to any of the corporate property conveyed to or vested in a trustee, assignee, or any other fiduciary, prior to the appointment of a receiver by the State court on August 25, 1950. It is true that all of the outstanding capital stock in the debtor corporation was conveyed to the voting trustee, but this was the act of the corporation's stockholders with reference to their own property and such transfer did not constitute a general assignment by the debtor for the benefit of its creditors within the meaning of section 3, sub. a(4) of the Act. In re Bartleson Co., D.C., 275 F. 390; In re Ambrose Mathews & Co., D.C., 229 F. 309, 310; see 41 Yale L. J. 1056. As stated in Collier's Bankruptcy Manual, § 3.04, pp. 85–86, "A general assignment by a corporation must satisfy all the requirements

---

rate or stockholders action of said Thrift Packing Company. * * * In voting said shares of stock, or doing any act with reference or respect to the control or management of said Thrift Packing Company, or of its affairs, as voting trustee and legal holder of the stock deposited hereunder, the voting trustee or his successor in office, shall exercise his best judgment in the interest of said Thrift Packing Company, and to the end that its affairs, shall be properly managed, and operated so as to pay off the existing indebtedness, * * * or to the end that the best interest of the creditors may be served so as to provide the highest possible return to said creditors * * * power of this voting trust shall extend to and include the power to vote for a dissolution and a liquidation * * * if, and when, it becomes apparent that such course would be the only possible or advisable way of returning a dividend to creditors * * * provided, however, since the corporation is to be managed by the Board of Directors as provided by the Laws of Texas * * * said voting trustee shall not hereby assume any other responsibility of said directors, unless and until he should become a director * * *."

of a general assignment; there must be a transfer of legal title to an assignee representing the interests of creditors. Hence no act of bankruptcy can be predicated upon internal changes in the corporation for the benefit of its creditors, such as entrusting the business to a committee for creditors under a voting trust agreement, appointing agents for liquidation, or transferring shares to creditors."

Appellant further contends that since the court's order appointing a receiver does not state that insolvency is the reason, this is not the type of receivership which comes within the purview of section 3, sub. a(5) of the Bankruptcy Act. For answer it is sufficient to say that if the debtor was insolvent or unable to pay its debts as they matured, at the time when the receiver was appointed, it is immaterial whether the receivership was based on this ground or some other ground. Collier Bankruptcy Manual, § 3.05, pp. 87–88. Here, the record clearly reveals that the receiver was appointed by the State court at a time when the bankrupt was either insolvent or unable to pay its debts as they matured.

Other contentions presented by appellant have been carefully considered but are without sufficient merit to warrant discussion.

Affirmed.